UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

A. D.,

                            Plaintiff,

v.                                                     5:17-CV-0478
                                                     (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

STANLEY LAW OFFICE, LLP                               STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                           JAMES DESIR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 18.).

      Currently before the Court, in this Social Security action filed by A.D. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for

judgment on the pleadings. (Dkt. Nos. 12, 15.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.    **RELEVANT BACKGROUND**

    A.    **Factual Background**

Plaintiff was born in 1961. (T. 84.) She completed three years of college. (T. 249.) Generally, Plaintiff's alleged disability consists of post-concussion syndrome, migraines, confusion, and slow memory and thought processing. (T. 84.) Her alleged disability onset date is December 31, 2012. (T. 84.) Her date last insured is December 31, 2018. (*Id.*) She previously worked as a insurance specialist, billing clerk, and project manager. (T. 28.)

    B.    **Procedural History**

On May 1, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 95.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 10, 2016, Plaintiff appeared before the ALJ, Lisa B. Martin. (T. 55-83.) On March 15, 2016, ALJ Martin issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 15-35.) On March 3, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C.    **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 20-30.)  First, the ALJ found Plaintiff met the insured status requirements through December 31, 2018 and Plaintiff had not engaged in substantial gainful activity since December 31, 2012. (T. 20.)  Second, the ALJ found Plaintiff had the severe impairments of cognitive disorder status post-concussion, headaches, and depression. (T. 20.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 21.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work[1], except Plaintiff must avoid all climbing of ladders, ropes, and scaffolding, and is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (T. 22.) Further, the ALJ found Plaintiff must avoid exposure to all dangerous work hazards, including unprotected heights and exposed machinery. (*Id.*)  The ALJ found Plaintiff is limited to routine, simple tasks, not involving a fast assembly production rate pace; she is unable to perform work tasks requiring a fixed downward head position for prolonged periods (15 minutes); and she will be off task approximately five percent of the workday due to headache distractions. (*Id.*)  Fifth, the ALJ determined Plaintiff is incapable of performing her past relevant work; however, there are jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 28-30.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1]   Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

### A.     Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the RFC finding is not supported by substantial evidence and is the product of legal error in that the ALJ violated the treating physician rule. (Dkt. No. 12 at 5-7 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ did not evaluate Plaintiff's subjective statements in accordance with the relevant legal standards.  (*Id.* at 7-8.)  Third, and lastly, Plaintiff argues the ALJ did not meet her burden at step five of the sequential process because the vocational expert testimony cannot provide substantial evidence to support the denial and has not demonstrated that a significant number of jobs exist.  (*Id.* at 8-9.)

### B.     Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues substantial evidence supports the ALJ's RFC assessment.  (Dkt. No. 15 at 7-14 [Def.'s Mem. of Law].)  Second, Defendant argues substantial evidence supports the ALJ's evaluation of Plaintiff's subjective statements about the limiting effects of her impairments.  (*Id.* at 14-16.)  Third, and lastly, Defendant argues substantial evidence supports the ALJ's step five finding.  (*Id.* at 16-17.)

## III.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A. Treating Physician Rule and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical

---

[2]     Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv).  The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff contends the ALJ failed to follow the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), because she "summarily stated" the RFC was supported by the totality of the medical evidence and Plaintiff's allegations.  (Dkt. No. 12 at 6 [Pl.'d Mem. of Law].)[3]      To be sure, the ALJ stated her RFC assessment was

---

[3]   Plaintiff cites to the "treating physician rule" located in the Regulations at 20 C.F.R. § 404.1527(d)(2) throughout her brief.  (*see generally* Dkt. No. 12 [Pl.'s Mem. of Law].)  At the time of Plaintiff's application, the "treating physician rule" was located at 20 C.F.R. §§ 404.1527(c)(2) and

7

supported by "the totality of medical evidence and [Plaintiff's] allegations." (T. 28.) Such a conclusory statement, without more, would be in violation of the Regulations as outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c). However, the ALJ made her remark in summation of her nearly five page discussion and analysis of the medical opinion evidence in the record and RFC determination. (T. 24.-28.) The record contains multiple treating source statements regarding Plaintiff's physical and mental abilities. Plaintiff does not specify which opinions she believes were not properly assessed. For the reasons stated herein, the ALJ properly weighed the opinion evidence in the record and provided good reasons for not affording controlling weight to the various treating physicians' opinions.

Here, the ALJ summarized and discussed the opinions provided by Plaintiff's treating sources: Ted Triana, D.O., Christine Ward, M.D., Angelina Rodner, Ph.D., Joseph Catania, M.D., Walter Levy, M.D., Thomas Griffith, Ph.D., physical therapist Kennett Carter, and nurse practitioner Joy Ezomo. (T. 24-28.) The ALJ also discussed and afforded weight to the medical opinions provided by consultative examiners Jeanne Shapiro, Ph.D. and non-examining State agency medical consultant, V. Reddy, Ph.D. (T. 27.)

As an initial matter, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the

---

416.927(c)(2). The change was effective March 26, 2012, due to a regulatory change that did not affect the substantive language of that section of the Regulation. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012).

8

Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Further, an ALJ's RFC determination need not align with a specific medical opinion. Where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).

Further, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. §§ 404.1502, 416.902. There are five categories of "acceptable medical sources." *Id.* §§ 404.1513(a), 416.913(a). Nurse practitioners and physical therapists are not included within those categories. Nurse practitioners and physical therapists are listed among the "other medical sources," whose opinions may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id.* §§ 404.1513(d)(1), 416.913(d)(1). Therefore, the ALJ was not required to assess statements by Nurse Ezomo, or the results of the FCE conducted by physical therapist Kennett Carter, under the treating physician rule.

In formulating her mental RFC determination, the ALJ afforded the opinions of Drs. Rodner and Ward "some weight."  (T. 27.)  In April 2014, Dr. Rodner opined Plaintiff had moderate limitations in activities of daily living, maintaining social functioning, and in maintaining concentration persistence or pace.  (T. 541.)[4]  Dr. Rodner concluded Plaintiff had marked limitations in two out of three areas for understanding and memory, and moderate limitations in the remaining area; marked limitations in six out of eight areas for sustained concentration and persistence, and moderate limitations in the remaining two areas; marked limitations in four out of five areas for social interaction, and moderate limitations in the remaining area; and marked limitations in all four areas for adaption n.  (T. 543-545.)  In May 2015, Dr. Ward completed an opinion what was identical to Dr. Rodner's April 2014 opinion.  (Compare T. 553-557 with 540-545.)

In September of 2014, Dr. Rodner found Plaintiff had moderate limitations in activities of daily living, maintaining social functioning, and in maintaining concentration persistence or pace, and one or two episodes of decompensation with a note that Plaintiff avoided situations that would cause her to decompensate.  (T. 501-504.)

In July 2014, Dr. Rodner stated Plaintiff was "100% disabled."  (T. 547-548.)  In June of 2015, Dr. Rodner opined Plaintiff was "75% disabled from her original work environment," but that "it [was] possible for her to be able to do or try to do something."  (T. 638.)  In November of 2014, Dr. Ward opined Plaintiff was "100% [disabled] from her

---

[4] The form completed by the doctor contained the following definitions.  Moderately limited means the "patient's restriction in this area would be sufficient to significantly compromise but not totally preclude performance."  (T. 543.)  Markedly limited means the "patient's restriction in this area would be sufficient to preclude performance."  (*Id.*)

10

previous job, 40% overall from pain, mood and cognitive perspective." (T. 508.)  When asked if Plaintiff could maintain competitive employment based on the frequency, duration and severity of Plaintiff's headaches, Hassan Shukri, M.D. answered "no."  (T. 537.)

The ALJ provided the following reasons for not affording the doctors' opinions controlling weight.  The ALJ concluded the opinion were "not consistent" with the record as a whole, including the doctors' own statements.  (T. 27); *see Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (the ALJ properly pointed to substantial evidence for giving the treating source narrative statement only probative weight, noting that the restrictive assessment was inconsistent with the source's own treatment notes, the conclusion of other medical sources, and plaintiff's testimony regarding her daily functioning).  The ALJ specifically noted the inconsistency between Dr. Rodner's statement that Plaintiff's cognitive disorder was so severe that she had marked limitations in areas of understanding and memory, sustained concentration and persistence, social functioning and adaptation, but also found Plaintiff could perform work in a capacity other than her past work.  (T. 27.)  The ALJ further noted the opinions were inconsistent with Plaintiff's testimony that she returned to school.  (*Id.*)  Therefore, the ALJ provided good reasons for not affording controlling weight to the opinions of Drs. Rodner and Ward.

In addition, the ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner."  20 C.F.R. §§ 404.1527(d), 416.927(d).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be

determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight). Therefore, the statements by Drs. Ward, Rodner and Shukri that Plaintiff was "disabled" or unable to meet competitive employment standards, were not entitled to any weight because a doctor's opinion regarding the disability of a plaintiff is not binding on the ALJ.

In weighing the medical opinion evidence in the record, the ALJ afforded "greater weight" to Dr. Shaprio and Dr. Reddy. (T. 27.) The opinions of a consultative examiner, including non-examining medical examiners, may override treating source opinions provided they are supported by substantial evidence in the record. *Netter v. Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008); *see also Camille v. Colvin*, 652 F. App'x (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

The ALJ also properly outlined and weighed the medical opinion evidence regarding Plaintiff's ability to perform the physical functional demands of work. In December of 2013, Dr. Triana completed a long term disability form for Plaintiff's insurance provider. (T. 562-563.) Based on Plaintiff's post-concussion syndrome, he checked the box indicating Plaintiff could continuously (defined as "over six hour shift"): stand, sit, bend, walk, and lift up to ten pounds. (T. 563.) He checked the box indicating Plaintiff could frequently (defined as "four to six hour shift") twist. (*Id.*) He checked the box indicating Plaintiff could occasionally (defined as "one to three hour shift"): climb, squat, and kneel. (*Id.*) When asked if Plaintiff could drive, pay bills, prepare meals, shop, bathe, dress, comb hair, remember instructions and do light housekeeping/laundry, Dr. Triana answered "yes." (*Id.*) When asked if Plaintiff could attend social obligations, Dr. Triana answered "no." (*Id.*)

Dr. Triana completed the same form in April 2014 and October 2014. (T. 506-507, 564-565.) In April and October 2014, Dr. Triana checked the box indicating Plaintiff could continuously lift up to ten pounds and occasionally perform keying/data entry. (T. 507, 565.) Further, in April and October 2015, Dr. Triana did not indicate Plaintiff's ability (either occasionally, frequently or continuously) to lift 11 to 20 pounds. (T. 507, 565.) All other limitations remained the same between December 2013, April 2014, and October 2014.

In June of 2015, Dr. Triana completed a Physical Capacities Evaluation form. (T. 558-561.) When asked how many hours Plaintiff could sit total during an eight hour workday he circled "2." (T. 558.) When asked how many hours Plaintiff could stand/walk total in an eight hour workday, Dr. Triana circled "2." (*Id.*) He indicated

Plaintiff could frequently (defined at 34%-100%) lift and carry up to ten pounds; occasionally (defined as up to 33%) up to 20 pounds; and never over 20 pounds. (T. 559.) He indicated Plaintiff could frequently reach above shoulder level; occasionally climb; occasionally balance; and never stoop, kneel, crouch or crawl. (*Id.*) Dr. Triana checked the box indicating Plaintiff had a "total" restriction working from unprotected heights; a "severe" restriction being round moving machinery and exposure to marked changes in temperature and humidity; a "moderate" restriction driving automotive equipment; and a "mild" restriction involving exposure to dust, fumes, and gases. (*Id.*)

The ALJ afforded Dr. Triana's opinions "some weight." (T. 28.) The ALJ provided good reasons for affording his opinions less than controlling weight. The ALJ concluded the evidence in the record did not support Dr. Triana's reduction in Plaintiff's abilities to sit, stand, and walk between his December 2013 opinion and June 2015 opinion because the medical evidence did not show a worsening of Plaintiff's condition. (*Id.*) The ALJ further stated Dr. Triana's treatment records did not support a reduction in functioning. (*Id.*) The ALJ thoroughly discussed Dr. Triana's opinions, provided the opinions specific weight, and provided good reasoning for affording the opinions less than controlling weight. The ALJ's RFC for light work is supported by Dr. Triana's December 2013 statement. (T. 563.) The lift and carry requirements of light work were further supported by Dr. Triana's June 2015 statement (T. 559) and the stand/walk requirements were supported by his December 2013 (T. 563), October 2014 (T. 507) and April 2014 (T. 565) statements.

The ALJ afforded "little weight" to the "independent evaluations" in the record, including the results of the functional capacity evaluation ("FCE"). (T. 28.) In an

independent medical exam ("IME") completed for the Worker's Compensation Board, Dr. Levy stated Plaintiff could return to work at "medium" exertional level. (T. 436.) In another IME, Dr. Griffith stated Plaintiff had a "clear potential to return to work based on the limited evidence of acquired cognitive impairment." (T. 587.) The FCE indicated Plaintiff could work at the sedentary exertional level. (T. 640.) These opinions are not treating source opinions; however, the ALJ still provided good reasons for affording the findings little weight. The ALJ reasoned the findings were inconsistent with the evidence as a whole. (T. 28.)

Overall, Plaintiff's assertion the ALJ failed to follow the treating physician rule is without merit. Plaintiff fails to point a specific opinion or analysis she finds at fault. Here the ALJ summarized all of the evidence in the record, including treating and non-treating medical opinions. The ALJ provided weight to the various statements and gave good reason for affording the treating source statements less than controlling weight. Therefore, the ALJ properly weighed the opinion evidence under 20 C.F.R. §§ 404.1527(c) and 416.927(c).

### B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23,

27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Plaintiff asserts "[t]he ALJ applied none of [the factors in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)] and merely used boilerplate language that is becoming too common in ALJ decisions." (Dkt. No. 12 at 8 [Pl.'s Mem. of Law].)

However, the ALJ's decision clearly shows she did more than just rely on boilerplate language.

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 24.) The ALJ outlined Plaintiff's testimony concerning her alleged symptoms. (T. 23.) In making a credibility determination, the ALJ assessed Plaintiff's activities of daily living, treatment received to relieve pain and symptoms, and measures Plaintiff took to relieve pain and symptoms including Plaintiff's testimony she did not need medication for her anxiety. (T. 24-25.) The ALJ also noted Plaintiff's allegations of limitations were inconsistent with the objective medical evidence. (T. 24-28.) Therefore, the credibility finding was based on a proper application of the required analysis and supported by substantial evidence in the record. *See David v. Comm'r of Soc. Sec.*, No. 7:16-CV-1121, 2017 WL 4541406, at *8 (N.D.N.Y. Oct. 10, 2017) (plaintiff's argument that the ALJ's credibility determination failed to apply the factors in the regulations and instead "merely used boilerplate language that is becoming too common in ALJ decisions" was contradicted by the ALJ's decision, which showed he considered the appropriate factors and provided specific reasons to support his finding); *see Alpeter v. Comm'r of Soc. Sec.*, No. 5:16-CV-1117, 2017 WL 4443978, at *7 (N.D.N.Y. Oct. 4, 2017) (plaintiff's argument, that the ALJ's credibility determination was faulty because she "merely used boilerplate language that is becoming too common in ALJ decisions" failed because the ALJ's credibility determination was proper and supported by substantial evidence in the record).

### C.  The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

Although Plaintiff has the general burden to prove she has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five " 'to show there is other work that [the claimant] can perform.' "  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [ ] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).

Plaintiff asserts the ALJ erred in his step five determination because the hypothetical questions presented to the VE were based upon an RFC that did not

accurately and completely describe Plaintiff's limitations. (Dkt. No. 12 at 8-9 [Pl.'s Mem. of Law].)

At the hearing the VE testified that given a hypothetical individual with Plaintiff's vocational factors and RFC, such person could perform the occupations of general office clerk and mail clerk. (T. 77-79.) Because the ALJ's RFC assessment was supported by substantial evidence, the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:  June 29, 2018

William B. Mitchell Carter
U.S. Magistrate Judge